**David R. BOLTON, Trustee, et al, Appellants,**

v.

**Eusebio ALVARADO et al, Appellees.**

**No. 01–86–0017–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 31, 1986.
Rehearing Denied Aug. 14, 1986.

Joe S. Maida, Maida & Felt, Houston, for appellants.

Robert H. Fisher, Carl, Lee & Fisher, Houston, for appellees.

Before EVANS, C.J., and JACK SMITH and WARREN, JJ.

## OPINION

WARREN, Justice.

This is an appeal from a judgment awarding appellees damages trebled under the Deceptive Trade Practice Act, Tex.Bus.

& Com.Code Ann. art. 17.50 (Vernon Supp. 1986), attorney's fees, and reformation of their deeds from appellants.

In 1973, appellants, in two transactions, bought 50 acres of land in Fort Bend County. In both of the above conveyances, the grantor retained one half of the oil, gas, and other minerals.

Appellants subdivided the east 29.20 acres of the two above tracts into 26 tracts, and in 1978 and 1979 made earnest money contracts with, and thereafter deeded certain tracts to appellees, individually.

Each earnest money contract contained the following clause:

In consideration of which, and within five (5) days from the date title to the above property is shown in Seller as hereinafter provided, Seller agrees to execute and deliver General Warranty Deed to Purchaser *conveying said property free and clear of all encumbrances except those named herein,* at which time Purchaser agrees to pay said consideration in the manner above provided. Any of the purchase money may be used to discharge encumbrances. (emphasis added).

In some of the earnest money contracts, no reference was made to a reservation of mineral interest, but others contained this clause:

One-half (½) of all the oil, gas and other minerals in, on and under the subject property including one-half (½) the mineral royalties, reserved in Deed dated March 3, 1961, from Lester Pestal to Travis B. Reese, recorded in Volume 413, Page 136, Deed Records, Fort Bend County, Texas, together with all rights, express or implied in and to the property covered by this policy, arising out of or connected with said interest. Title to said interest not checked subsequent to date of aforesaid instrument.

When the appellees received their warranty deeds from the appellants, each warranty deed contained the two clauses, as follows:

This *conveyance is made* and accepted *subject to* all liens, restrictions, covenants, conditions, easements, maintenance charges, and the liens securing said charges, *and all outstanding mineral and royalty interests, if any, affecting the premises conveyed* herein, *now of record* in the Office of the County Clerk of Fort Bend County, Texas, to the extent, but only to the extent, the same are now in force and effect and relate to said premises; (emphasis added), and,

and there is hereby *reserved unto Grantors,* their successors, heirs, and assigns, *an undivided one-half (½) of all of the oil, gas* and other minerals in and under and that may be produced *from the above described property;* (emphasis added).

Gulfland Title Company issued title policies to each appellee; those title policies made no exception regarding the reservation of mineral interests in appellants.

After oil was discovered on the property, one of the property owners contacted Gulfland Title Company to inquire about the mineral interests. After Gulfland Title Company recognized the error it had made in guaranteeing title to the minerals in the title policies issued to the appellees, their attorney, Mr. Fisher, contacted each of the appellees to obtain their authorization to file suit against the appellants. The letters stated that the property owners would either have to join in a suit against the appellants or waive any claim to the minerals under their title policy. The letters, which were sent by Mr. Fisher to the appellees, expressly said that Mr. Fisher was representing Gulfland Title Company and that all the expenses would be borne by the title company. Appellees sued for breach of contract under the D.T.P.A., and for a reformation of the deed.

Among the twelve issues submitted were the following five issues answered by the jury as indicated.

Special Issue No. 1

Were the plaintiffs induced by the earnest money contracts to believe they were purchasing the minerals owned by defendant David R. Bolton, Trustee?

Answer: No.

Special Issue No. 2

Did David R. Bolton, Trustee, intend by the earnest money contracts to sell or to retain the minerals he owned?

Answer either "sell" or "retain"

Answer: Sell

Special Issue No. 3

If you answered Special Issue No. 2 "retain", and only in that event, then answer:

Was the conflict between the plaintiffs' beliefs, and David R. Bolton, Trustee's intention the result of fraud by David R. Bolton, Trustee?

In connection with the foregoing Special Issue, you are instructed that the elements of actionable fraud are false promise to do an act, when the false promise is material, made with the intention of not fulfilling it, made to a person for the purpose of inducing such person to enter into a contract, and relied on by such person in entering into such contract.

Answer: N/A

Special Issue No. 4

If you answered Special Issue No. 2 "retain", and only in that event, then answer:

Was the conflict between the plaintiffs' belief and David R. Bolton's intention the result of a mutual mistake?

A mutual mistake is one common to both parties, both laboring under the same misconception in respect to the terms of the instrument.

You are instructed that knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual [sic] mistake.

You are further instructed that a unilateral mistake is not ground for affording relief to the party who was mistaken, where the other party in no way induced it.

Answer: N/A

Special Issue No. 5

Did David R. Bolton, Trustee, breach an express warranty in his earnest money contracts with the Plaintiffs by reserving minerals in the deeds to the Plaintiffs? In connection with the foregoing Special Issue, you are instructed that any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. "Goods", as used herein, includes real property.

Answer: Yes.

The court entered judgment against appellants reforming the deeds and granting the appellees a one-half (½) mineral interest; awarding the appellees money damages; trebling the amount of actual damages; disregarding the jury's answer to the special issue regarding attorney's fees and awarding attorney's fees of $20,000 to appellees.

In seven points of error, appellants claim: (1) that the court erred in allowing testimony concerning the earnest money contract; (2) that there was no evidence and insufficient evidence to show a breach of warranty; (3) that the court erred in granting judgment against appellants under the Deceptive Trade Practice Act; (4) that the court erred in awarding attorney's fees against appellants because there was no evidence that appellees agreed to pay their attorney for his services; and (5) that there was no evidence that such attorney's fees were reasonable.

We first note that each of the contracts promised to deliver a "General Warranty Deed conveying the tract free and clear of all encumbrances except those named herein." This implied that appellees would receive all minerals not specifically reserved in the contract. Some of the contracts specifically mentioned that the deed would except a previous reservation by a predecessor in title, but the others mentioned no specific reservation.

Next, we note that appellees' causes of action were based on their contention that although they were supposed to receive one-half of the mineral rights, the deed conveyed them no mineral rights.

We are convinced that the parties' rights in this case are determined by the doctrine of merger; therefore, our opinion will speak mainly of that doctrine.

■ Under the doctrine of merger, in the absence of pleadings and proof of fraud, accident, or mutual mistake, the rights and duties created by a land sales contract are merged into the deed when the seller delivers, and the buyer accepts, the deed. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1204 (5th Cir.1985); *Commercial Bank, Unincorporated v. Satterwhite*, 413 S.W.2d 905, 909 (Tex.1967); *Barker v. Coastal Builders, Inc.*, 153 Tex. 540, 548, 271 S.W.2d 798, 803 (1954); *Tuberville v. Upper Valley Farms, Inc.*, 616 S.W.2d 676, 678 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Duke v. Duke*, 605 S.W.2d 408, 410 (Tex.Civ.App.—El Paso 1980, writ dism'd); *Carter v. Barclay*, 476 S.W.2d 909, 914 (Tex.Civ.App.—Amarillo 1972, no writ); *Baker v. Baker*, 207 S.W.2d 244, 250 (Tex. Civ.App.—San Antonio 1947, writ ref'd n.r. e.).

■ To avoid application of the merger doctrine on the basis of mutual mistake, the party seeking to avoid the doctrine must show that both parties were mistaken about the same material fact. *Tuberville*, 616 S.W.2d at 678. A mutual mistake is material only if it involves the substance or subject matter of the contract and is not related merely to a collateral matter. *Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 870 (Tex.Civ.App.—San Antonio 1980, no writ).

■ To avoid the merger doctrine on the basis of actionable fraud, the moving party must prove: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he thereby suffered

injury. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

 The record reflects that the plaintiffs pleaded fraud and mutual mistake in their trial amendment; it also shows that special issues relative to fraud and mutual mistake were submitted to the jury. However, the jury's responses to those special issues were predicated upon an affirmative finding to special issue two, that the defendant Bolton intended to retain the minerals he owned. Since the jury found that Bolton intended to sell, not retain, the minerals he owned, the jury did not answer the special issues on fraud and mutual mistake.

The jury's answers to the special issues fail to support any finding of fraud or mutual mistake, which one attempting to avoid the doctrine of merger must affirmatively show.

Appellants objected to the introduction of the earnest money contracts on the ground that the doctrine of merger rendered the documents immaterial. At the close of appellees' case in chief and again after both sides had rested, appellant moved for a directed verdict on the ground that appellees' cause of action was precluded by the doctrine of merger. Both motions were overruled.

We hold that the lack of a finding of either fraud or mutual mistake, preclude appellees from recovering on their breach of contract on a D.T.P.A. suit.

■ Appellees urge that the defense of merger is not available to a defendant in a suit under the D.T.P.A., *Smith v. Baldwin*, 611 S.W.2d 611 (Tex.1980). We disagree. In *Baldwin*, although the court did express its opinion that the D.T.P.A.'s purpose was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit, the opinion only held that substantial compliance by a builder was not a defense to a D.T.P.A. suit. *Id.* at 616. Further, the merger doctrine is a rule of evidence rather than a defense.

The judgment of the trial court is reversed and judgment is rendered that appellees take nothing.