**R. A. COKER, Appellant,**

v.

**George C. HUGHES, Appellee.**

No. 6705.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 4, 1957.

Rehearing Denied Dec. 9, 1957.

Vickers & Vickers, Lubbock, for appellant.

Key & Carr, Lubbock, for appellee.

CHAPMAN, Justice.

This suit was instituted by R. A. Coker, appellant herein, against George C. Hughes, appellee, upon a lease contract to recover rentals, which he asserts had accrued from January 1, 1955, through July, 1956, and without prejudice to appellant's right to recover for the other five months of 1956. The lease contract provided a beginning date of January 1, 1955 and a terminal date of December 31, 1957, on the basis of $300 per month. At the time of the execution of the contract Hughes paid the first month's rent of $300 and the last year's rent of $3,600.

Appellee occupied the building during the year 1954 and paid the monthly rental as it accrued each month of that year, but advised appellant before the first of the year he was going to move out of the property at the end of 1954 and that if he (Coker) wanted to make other arrangements for another tenant to go ahead and do so. He moved from the building about the first of the year, refused to pay rents thereafter and appellant instituted this suit.

The trial was to a jury and upon certain issues being answered favorable to appellee the court rendered judgment in favor of him and denying appellant any recovery. From this judgment appellant Coker has perfected his appeal to this court.

It was the contention of the appellee in the court below, as it is here, that the agreement between the parties hereto was that the $3,600 paid in advance for the last year's rental was to be retained by appellant as his sole remedy in the event of default by appellee under the lease contract. He further contends the following provision of the contract bound the appellant to such remedy exclusively:

"In the event of default on the part of the tenant in payment of any rental when due, the Landlord shall have the option of declaring the contract terminated and entering upon the premises and dispossessing the tenant, and the last year's rental shall be retained by the Landlord as liquidated damages by reason of default of tenant."

Appellee further pleaded that if the court determined the provision of the contract just quoted did not bind the landlord Coker to accept the last year's rental as liquidated damages, as an only remedy against appellee Hughes, "then the said provision was ambiguous; that the defendant and plaintiff agreed, prior to the execution and at the time of the execution of said lease contract, that the defendant, in the event he desired to vacate said premises prior to the expiration of the original 4-year term thereof, could do so and that he would incur no liability to the plaintiff other than that the plaintiff would be entitled to retain the last year's rental of $3,600.00 as liquidated damages for default of the defendant." Appellee further pleaded that he refused to enter into the contract save and except that no other recourse would be had against him other than the retention of the $3,600 in the event of his failure to occupy the premises and pay the monthly rental for the term of the lease; that the court should construe the contract in accordance with "the intention of the parties" and should find he was not liable to Coker for any amount other than the last year's rental; that if the court held that the express language of the contract above quoted did not bind the Landlord to the $3,600 as his only remedy then that such failure was due to the fault of the scrivener who drew the lease contract and failure to include such express provision was due to a mutual mistake on the part of the parties to the lease, does not express the intention of the parties and does not conform to the agreement actually made.

Appellant urged numerous special exceptions to appellee's allegations; alleged that the agreement of Hughes to enter into a 4-year contract to lease the property was a part of the transaction and absolutely bound Hughes to pay the rent for the full 4-year term; that the contract of purchase and sale, as well as the lease contract thereafter executed by the parties was plain and

unambiguous and bound Hughes to pay the agreed rental for the full 4-year period. Appellant also protected his record fully and completely by objections to testimony; objections to the court's charge; motion for peremptory instruction; motion for judgment on the verdict; motion for judgment non obstante veredicto; motion to set aside certain findings of the jury; and motion for a new trial.

From issues submitted to the jury they anwered there was not any mutual understanding and agreement between the parties at the time of the execution of the sales contract that in the event the defendant failed to occupy the building in question and pay the rental therefor during the entire 4-year term Coker would retain the last year's rental as liquidated damages for such default and would have no other remedy; there was a mutual understanding and agreement at the time of the execution of the lease contract that in the event Hughes failed to occupy the building in question and pay the rental during the entire 4-year term Coker would retain the last year's rental as liquidated damages for such default and would have no other remedy against Hughes; that the failure of the lease contract to provide that Coker would retain the last year's rental as liquidated damages and would have no other remedy against Hughes was a mutual mistake on the part of Coker and Hughes at the time of the execution of the contract; that Coker elected to terminate the lease contract and retain the last year's rental as liquidated damages; that Coker accepted surrender and possession of the building in controversy with the intent that the lease contract executed by the parties should be terminated and Hughes released from further liability thereon; and that Coker, after resuming control of the premises, used reasonable diligence to re-let the premises.

Obviously, with so many controlling issues answered by the jury favorable to appellee, the court below properly rendered judgment for Hughes if the court was correct in admitting parole evidence to prove appellee's theory of the case, if the issues were properly framed and if there was sufficient admissible testimony of probative value to justify the issues submitted and the answers thereto. Let us then proceed to the questions of whether the lease contract in controversy was of such ambiguous nature concerning the remedies of appellant in the event of default by appellee as to admit parole evidence of the intention of the parties; whether there was a mutual understanding between the parties that in case of default by Hughes, he would be limited in penalty to the $3,600 paid as last year's rental; whether the failure of the contract to provide that appellant's only remedy in case of default by appellee was a mutual mistake; and whether the evidence admitted was of sufficient probative value to support the findings of the jury favorable to appellee.

In Ellisor v. Kennedy, 128 S.W.2d 842, 844 (writ refused), the Court of Civil Appeals at Galveston said:

"The ultimate purpose of the courts should be to arrive at the real intention of the parties to a contract, and to give the contract force accordingly. It is an important rule of construction that a written contract, plain and reflecting no shadow of doubt as to its meaning, shall be the sole evidence of the intention of the contracting parties. But, if the contract is not clearly unambiguous, the rule should not be permitted to defeat an intention and understanding which can be clearly proven by parol, and to lead to a conclusion which is absurd."

In Curry v. Texas Co., 8 S.W.2d 206, 211 (error dismissed), the Eastland Court of Civil Appeals said:

"The ultimate purpose of the courts should be to arrive at the real intention of the parties to a contract, and to give the contract force accordingly. It is an important rule of construction

that a written contract, plain and reflecting no shadow of doubt as to its meaning, shall be the sole evidence of the intention of the contracting parties. But, if the contract is not clearly unambiguous, the rule should not be permitted to defeat an intention and understanding which can be clearly proven by parol, and to lead to a conclusion which is absurd. We think that, where there is room for reasonable doubt as to the meaning intended by the use of a term in a contract, as there is in this case, that the parties should be permitted to explain the same by parol.

"Putting one of two possible constructions on a term in a contract, without permitting the parties to show which was actually in their minds, is taking the chance of enforcing a contract entirely different from that on which their minds met. No harm can be done in discovering and enforcing the real agreement, if such can be done, without doing violence to some principle of transcending importance. The parol evidence rule, like other rules of practice, is designed to effectuate justice, but it is not inflexible, and so many instances have arisen where its strict application would be arbitrary and oppressive that the reports contain a great body of exceptional law."

Again, in Barker v. Fagg, Tex.Civ.App., 107 S.W.2d 490, 494, the Austin Court of Civil Appeals, in quoting from another authority said:

" 'The parol evidence rule does not apply where it is alleged and proved that, by reason of mutual mistake of fact or accident, the agreement fails to embody all of the terms of the contract actually made, or does not express the real intention of the parties; and in such a case extrinsic evidence is admissible to show what the real contract was.' Dunham v. Chatham, 21 Tex. 231, 73 Am.Dec. 228; Texas Pacific Coal & Oil Co. v. Crabb, Tex.

Com.App., 249 S.W. 835; Keystone Pipe & Supply Co. v. Kleeden, Tex.Civ.App., 299 S.W. 671."

Appellee Hughes testified that in discussing with Coker the conditions under which he would lease the premises in controversy he said:

"Now, Mr. Coker, I want you to distinctly understand one thing, and that is I might stay on this place six months, but if I don't I will forfeit to you the $3,600.00 that I am paying in advance, and that's the only way that I will rent your place * * *."

Then, in answer to a question as to what Mr. Coker said in reply to the statement just above made, appellee testified:

"He never said anything against it, or anything at all. * * * That seemed to have closed the deal and we went from there to Napier's office."

He further testified in substance that he explained in the presence of Mr. Coker the same thing to Mr. Napier, the lawyer who prepared the sales contract, that he had told Mr. Coker; that is, that he would rent the premises only on the condition that his only obligation would be to forfeit the last year's rent if he did not want to keep the property.

Hughes further testified there was a clause in the lease contract prepared by Robert Bean, an attorney which he objected to and when asked what the objectionable clause was testified:

"Q. What objection did you make? A. Well, there was a clause in it that I told him I couldn't afford to sign it.

"Q. What clause was that? A. Well, it stated, in effect, that * * * the substance of it was that if, for any reason, I didn't pay the rent when due, that the Landlord could re-enter, take possession, dispossess me and rent the property to the best advantage he could, and hold me responsible for the difference in what he might fail to get ac-

cording to what I was to pay him, and I refused to sign it on that terms.

"Q. What did you state to Mr. Bean, if anything, at that time? A. About that?

"Q. Yes sir. A. I told him I couldn't sign the contract with that clause in it.

"Q. Did you give any reason why you couldn't sign it? A. Yes, he asked me what then is the deal, and I explained to him the deal.

"Q. And, what did you tell him the deal was? A. I told him the deal was that I was renting it for four years, paying the fourth year in advance, and if for any reason something might happen that I didn't continue the lease I would forfeit the $3,600.00 to Mr. Coker."

Hughes testified Mr. Coker heard this conversation and never raised any objections. He further testified that Mr. Coker never at any time indicated he would not agree to sign a lease contract containing a condition providing that if Hughes defaulted Coker would take the $3,600 and would have no other recourse against him. Hughes testified Coker never did indicate any opposition to such a condition.

At least to some extent Mr. Hughes' testimony to the effect that he refused to sign a lease contract that failed to provide he would be liable, in case of default on the contract, only for the $3,600 paid in advance on the last year's rent was corroborated by the real estate agent, Ketchersid, who handled the transaction and whose fee was paid by appellant Coker. His testimony was that Hughes, in the presence of Coker objected to the lease as first drawn:

"Q. Did he say anything to Mr. Bean about it? A. He objected to it.

"Q. What did he say to Mr. Bean? A. Well, it just didn't state what he wanted it to state, and he objected to it.

"Q. And, what did Mr. Bean say? A. Well, they re-wrote either part of it, or all of it, they re-wrote it.

"Q. Now, were Mr. Hughes' objections made in the presence of Mr. Coker? A. They were made in the presence of all of us.

"Q. Now, did—what did Mr. Hughes tell Mr. Bean that he would agree to do on that lease contract? A. Well, the thing that Hughes didn't like about it was that is, he wanted to really not bind him for everything— he wanted the forfeit money to take care of all of that. That is what he wanted.

"Q. He wanted to forfeit the last year's rent in case he vacated it? A. Yes, that's right, or got kicked out of it or died or something else.

"Q. Regardless of—if he defaulted on the contract, he wanted to forfeit the last year's rental, is that it? A. That's right."

■ Though we concede the question is a close one, we believe the court below properly admitted the testimony of appellee Hughes and the witness Ketchersid in order to determine the true intention of the parties with respect to the contract, and we believe, and so hold, that when the last paragraph of the lease contract is read in the light of the circumstances surrounding its execution the contract was not so "clearly unambiguous" as to preclude the court below in admitting parol evidence to determine the intention of the parties.

■ It is true that when appellee objected to the lease contract as first drawn by the attorney, Robert Bean, that the part objected to was re-written and changed, was read by Hughes and then signed by him. Appellant insists that under these circumstances appellee was bound thereby and is not in a position to assert a mutual mistake. In Estes v. Ferguson, Tex.Civ.

App., 203 S.W. 941, 944, the court said:

"Complaint is made of the court's refusal to, in effect, peremptorily instruct the jury that there was no mistake in the contract between Estes and Qualls. The requested instruction was based upon the admission of Qualls that the provisions of the contract correctly covered the things enumerated therein, and that he had ample opportunity to examine same before signing it. In our opinion the charge was properly refused. Where terms and conditions have been by mutual mistake of the parties omitted from instruments such as contracts, etc., it is competent to show that fact and supply the omission by parol. Such we believe to be the well-settled rule. The fact that the other provisions of the contract are correct, and that the complaining party had ample opportunity to discover the omission, is not conclusive of the issue. It is at most a circumstance to be considered by the jury."

Appellee objected to the provision in the first contract by Attorney Bean because it failed to give him the right, in case he terminated the lease, to be obligated only to the extent of the $3,600 he was to pay in advance. That was removed and a new clause inserted omitting any reference to the Landlord's right to hold the tenant for deficiency in rent in the event of default and inserting a new clause, which we believe most any layman would have interpreted to obligate him only for the $3,600 as penalty in the event of default. It would seem patently unfair and inequitable to deny the right of a court or jury to pass on the facts pleaded and testified to by appellee in this connection when to do so would subject him to a greater penalty than the provision of the contract objected to and deleted would have done, for it not only affords the remedy to the Landlord the original instrument did, but gives him the additional remedy of retaining the last year's rental.

Appellant, with some justification, asserts there is no evidence that he ever agreed to accepting only the $3,600 in case of default of appellee on the lease. However, there is ample evidence that he was present during the times appellee objected and refused to sign any contract that he thought obligated him for anything more by way of penalty than the $3,600 in the event of abandonment of the lease.

In the case of Ferguson v. Martin, Tex. Civ.App., 70 S.W.2d 804 (writ dismissed) the Court found a consent on the part of the borrower to pay an additional $75 in interest because of the silence of the borrower when the renter advised the borrower that the extra charge would be made. In the instant case, according to the record before us, appellant kept silent on at least two occasions when appellee was asserting the extent to which he would be obligated on the contract. We believe under all the facts surrounding this case appellant's conduct showed assent to enter into the lease contract with the limitations demanded by appellee. Additionally, it has been held that knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to a mutual mistake. Warren v. Osborne, Tex.Civ.App., 154 S.W. 2d 944.

Again, in the case of Thomas v. Baptist Foundation of Texas, Tex.Civ.App., 123 S.W.2d 440, 448 (error dismissed, judgment correct), the court said:

"It often happens, as it has in this case, that the instrument in controversy does not speak the true intentions of the parties as agreed upon prior thereto, and the failure of the instrument is the result of a mistake. It is but natural that the opposite party will insist in court that the instrument speaks the true agreement, if this were not true they would have no lawsuit. The test, we think, is to determine what the parties intended the instrument should

contain prior to and at the time of its execution."

■ We believe the pleadings of appellee in the court below were such as to justify the introduction of parole testimony to resolve the ambiguity which appellee alleged existed in the lease contract by showing the intention of the parties and to show that the omission from the contract of a provision requiring acceptance of the last year's rental as appellant's liquidated damages for appellee's default was a mutual mistake.

Appellant also urges as error the submission of Issues 1 and 2 concerning mutual agreement and understanding at the time of the execution of the sales contract. Issue No. 1 was answered favorable to appellant and Issue No. 2 being a conditional issue did not require an answer following a negative finding to Issue 1. We do not say the court committed error in submitting the issues just mentioned, but if so it would be a harmless error since the jury response to the issues were favorable to appellant. Accordingly, appellant's Points 1 through 15 are overruled.

Whatever our views might be concerning the other points raised by appellant there is not anything we could say that would change the result of what we have said above. To write further would only lengthen the record and avail nothing.

The judgment of the court below is affirmed.