

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00320-CV

**JOAN E. GIVENS, SHANNON KRAUS, GREGORY D. GIVENS, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF WILLIAM L. GIVENS, J. HAROLD SEWELL, AND ALAMO TITLE COMPANY,**

**Appellants**

 **v.**

**ELVIS AND DIANNA WARD,**

**Appellees**

From the 413th District Court
Johnson County, Texas
Trial Court No. C2005-00331

## O P I N I O N

Elvis and Dianna Ward purchased a 115-acre tract of land from Joan Givens, Shannon Kraus, and Gregory Givens, Individually and as Independent Executor of the Estate of William L. Givens (collectively, the Givenses). The warranty deed contains no reservation of mineral interests. The trial court granted the Wards' summary-judgment motion and denied summary-judgment motions filed by the Givenses, Harold Sewell,

and Alamo Title Company. The primary substantive issues in this appeal are: (1) whether the Givenses are entitled to reformation of the warranty deed due to mutual mistake because it does not contain a reservation of the mineral interests in the property; and (2) whether Sewell and Alamo Title are entitled to specific enforcement of an agreement the parties signed at closing whereby the parties agreed "to fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the [real estate contract]." We will reverse and remand.

## Background

After a period of negotiations, the Givenses agreed to sell the 115-acre tract to the Wards for $250,000. The sales contract contains the following provision (paragraph 2(F)) regarding the disputed mineral interests:

> F. RESERVATIONS: Seller reserves the following mineral, water, royalty, timber, or other interests:

SEE ATTACHED OIL, GAS, AND MINERAL LEASE[1]

Attached to the sales contract is a 2001 oil and gas lease from the Givenses in favor of a third party. In a separate document entitled "Acceptance of Title and Closing Agreements," the parties agreed "to fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the [sales contract]."

---

[1] This handwritten reference to the oil and gas lease was inserted into the sales contract by the Givenses' real estate agent. The Givenses and the Wards initialed paragraph 2(F).

The deed contains no mineral reservation. About six months after closing, Alamo contacted the Givenses and the Wards by letter explaining that the deed erroneously omitted the mineral reservation and asking the parties to sign a correction deed with the mineral reservation. The Wards refused to sign.

Instead, they filed a declaratory judgment action against the Givenses seeking a judicial declaration that they own the disputed mineral interests. The Givenses filed a general denial, asserted the affirmative defense of mistake, and counterclaimed for reformation of the deed due to mistake. The Wards responded with a traditional motion for summary judgment contending among other things: (1) the deed is unambiguous, (2) it cannot be set aside due to unilateral mistake, and (3) there was no mutual mistake. The Givenses amended their pleadings to include an additional counterclaim for breach of the compliance agreement. Alamo and Sewell then filed a joint petition in intervention alleging breach of the compliance agreement and requesting specific performance. The Givenses followed with an amended pleading asserting counterclaims: (1) alleging breach of the compliance agreement; and (2) seeking a judicial declaration that the deed's conveyance of the minerals to the Wards is invalid.

The Givenses then filed a summary-judgment motion on both counterclaims against the Wards. Alamo and Sewell filed a joint summary-judgment motion on their breach of contract claims. The Wards filed a response to "Defendant's Motion for

Summary Judgment."[2]  The Wards argued in their response that the deed is unambiguous, "there are no legal reasons to reform the deed" because there is no mistake, etc., and thus they did not breach the compliance agreement.

The Givenses filed a response to the Wards' summary-judgment motion alleging that the Wards failed to conclusively establish that there was no mutual mistake and requesting that the Wards' motion be denied.

Following a hearing, the trial court signed a "final order" granting the Wards' summary-judgment motion and denying the other parties' summary-judgment motions.

## Standard of Review

We review a trial court's summary judgment de novo.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  In reviewing a summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented.  *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 822-24 (Tex. 2005)).  We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant.  *See Goodyear Tire*, 236 S.W.3d at 756 (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *Spates*, 186 S.W.3d at 568).

---

[2]     Although the title of the Wards' summary-judgment response is vague, the prayer for relief indicates that it was directed toward both the Givenses' summary-judgment motion and Alamo's and Sewell's joint motion.

When competing motions for summary judgment are filed and some are granted while others denied, the general rule is that the appellate court should determine all questions presented and render the judgment the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *Am. Hous. Found. v. Brazos County Appraisal Dist.*, 166 S.W.3d 885, 887 (Tex. App.—Waco 2005, pet. denied). This rule applies only when both (or all) parties' motions sought a final judgment, namely, relief on all pending claims. *See CU Lloyds of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam); *Am. Hous. Found.*, 166 S.W.3d at 887; *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 303 (Tex. App.—Corpus Christi 2002, pet. denied). However, an appellate court may reverse and remand if resolution of the pertinent issues rests in disputed facts or if the parties' motions are premised on different grounds. *See Sarandos v. Blanton*, 25 S.W.3d 811, 814 & n.5 (Tex. App.—Waco 2000, pet. denied).

**Reformation of Deed**

The Givenses contend in their fourth issue that genuine issues of material fact remain on the question of whether they are entitled to reformation of the deed. Sewell raises the same complaint in his fourth issue.

"The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument truly reflects the *original* agreement of the parties." *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987); *accord Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 659 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Hatch v. Williams*, 110 S.W.3d 516, 522

(Tex. App.—Waco 2003, no pet.). For reformation of a written instrument, a party must prove two elements: "(1) an original agreement and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing." *Cherokee Water Co.*, 741 S.W.2d at 379; *accord U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, No. 05-06-01138-CV, 2008 WL 62561, at *8 (Tex. App.—Dallas Jan. 7, 2008, no pet. h.); *Tribble & Stephens*, 154 S.W.3d at 659.

Here, the Givenses contend that the requisite mutual mistake consists of their unilateral mistake in signing a deed which did not conform to the parties' agreement and the Wards' knowledge that the deed did not conform. "Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake." *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988) (citing *Cambridge Cos. v. Williams*, 602 S.W.2d 306, 308 (Tex. Civ. App.—Texarkana 1980), *aff'd*, 615 S.W.2d 172 (Tex. 1981));[3] *accord Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526, 539 (Tex. App.—Waco 2008, pet. filed); *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 213 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

The Wards suggest that different considerations apply when a party seeks reformation of a deed, particularly a deed which is unambiguous on its face. As an example, the Wards cite *Alvarado v. Bolton*, 749 S.W.2d 47 (Tex. 1988), for the proposition

---

[3]     In *Cambridge Companies*, the Texarkana Court of Civil Appeals cited its 1941 decision in *Warren v. Osborne*, which in turn quoted a 10th Circuit decision, which in turn quoted Williston's treatise on contracts. *Cambridge Cos. v. Williams*, 602 S.W.2d 306, 308 (Tex. Civ. App.—Texarkana 1980) (quoting *Warren v. Osborne*, 154 S.W.2d 944, 946 (Tex. Civ. App.—Texarkana 1941, writ ref'd w.o.m.) (quoting *Columbian Nat'l Life Ins. Co. v. Black*, 35 F.2d 571, 574 (10th Cir. 1929) (quoting 3 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 1497))). The current Williston treatise continues to recognize this category of mutual mistake. *See* 27 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 70:105 (4th ed. 2003).

that the merger doctrine applies and that any contrary language in the real estate contract was extinguished when the Givenses signed the deed. In *Alvarado*, the Supreme Court described the merger doctrine as follows:

> When a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties.

*Id.* at 48 (quoting *Baker v. Baker*, 207 S.W.2d 244, 249 (Tex. Civ. App.—San Antonio 1947, writ ref'd n.r.e.) (quoting 2 ROBERT T. DEVLIN, A TREATISE ON THE LAW OF DEEDS § 850a (2d ed. 1897))).

Although the Court recited this as a correct statement of the merger doctrine as it applies to deeds, the Court held that the merger doctrine did not apply in that case, which was a DTPA suit for breach of a warranty contained in the parties' earnest money contract. *Id.* ("we hold that the doctrine of merger may not be applied to defeat a cause of action under the DTPA for breach of an express warranty made in an earnest money contract and breached by deed"). And as that Court has previously held, the merger doctrine applies to deeds only "in the absence of fraud, accident, or mistake." *Commercial Bank of Mason v. Satterwhite*, 413 S.W.2d 905, 909 (Tex. 1967); *accord Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 487 (Tex. 2005); *Hill v. Spencer & Son, Inc.*, 973 S.W.2d 772, 775 (Tex. App.—Texarkana 1998, no pet.).

Moreover, our research has disclosed numerous decisions involving reformation of a deed. *See, e.g., Davis*, 750 S.W.2d at 768; *Hatch*, 110 S.W.3d at 522; *Hill*, 973 S.W.2d at 775; *Hamberlin v. Longview Bank & Trust Co.*, 770 S.W.2d 12, 13-14 (Tex. App.—

Texarkana 1989, writ denied). Thus, we reject the Wards' contention that the merger doctrine bars the Givenses' reformation claim.[4]

## 1. Original Agreement

The Givenses' reformation claim as pleaded rests on (1) whether the deed varies from the parties' original agreement; and (2) whether this variance was a mistake on the Givenses' part of which the Wards had knowledge. Thus, we must first determine what was the parties' original agreement.

As previously stated, the sales contract contains the following reservation, "Seller reserves the following mineral, water, royalty, timber, or other interests: SEE ATTACHED OIL, GAS, AND MINERAL LEASE." If this reservation is unambiguous, then extrinsic evidence is not admissible to interpret it. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 129 (Tex. App.—Corpus Christi 2006, pet. denied); *EMC Mortgage Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex. App.—Austin 2005, pet. denied). Conversely, if this reservation is reasonably susceptible to more than one legal meaning, then it is ambiguous and extrinsic evidence is admissible to determine its true meaning. *Id.*

---

[4]   The Wards also contend that other legal principles pose a bar to the Givenses' reformation claim including (1) the expressed-intention rule, (2) the greatest-estate-transferred rule, and (3) the no-unilateral-mistake rule. However, the first two are principles of contract construction and have no bearing on a claim of mutual mistake. *See, e.g., Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam) ("In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the document."); *Stewman Ranch, Inc. v. Double M Ranch, Ltd.*, 192 S.W.3d 808, 811 (Tex. App.—Eastland 2006, pet. denied) ("[C]ourts have held that deeds should be construed to convey the greatest estate possible and that reservations should be construed against the grantor. These canons, however, do not apply when the deed is unambiguous."). And because the Givenses allege mutual mistake, the third principle does not apply.

Whether a contractual provision is ambiguous is a question of law for the court. *Id.* In construing a contract, our primary concern "is to ascertain the true intent of the parties as expressed in the instrument. If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Kelly-Coppedge*, 980 S.W.2d at 464 (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam)); *accord Barrand*, 214 S.W.3d at 129; *EMC Mortgage*, 167 S.W.3d at 413.

The Givenses contend that the quoted language constitutes a reservation of the entire mineral estate. The Wards contend that the provision is ambiguous. They refer to Appellant Kraus's statement in a letter to the realtor who represented the Givenses and the Wards in this transaction. Kraus stated that the provision is "ambiguous" and "could be interpreted to mean that all rights were reserved, that only the rights under the lease were reserved, or as a simple disclosure that the lease existed, reserving no rights." The Wards also refer to Sewell's deposition testimony that he cannot tell from the quoted language "specifically what is reserved."

We agree with the Wards that the provision is ambiguous. Therefore, we may consider extraneous evidence to aid in its interpretation. *See id.* The Givenses refer to evidence of the parties' pre-contract negotiations to support their interpretation. *See Savage v. Doyle*, 153 S.W.3d 231, 234 (Tex. App.—Beaumont 2004, no pet.); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). In this regard, the Givenses cite Dianna Ward's deposition testimony that the Wards' initially offered $200,000 for the property with the minerals. When the Givenses

rejected this offer and countered with an offer to sell the property without the minerals for $280,000, the Wards responded by offering $220,000 with half the minerals. After the Givenses rejected this offer, the Wards offered $245,000 without the minerals. Two weeks later, the parties signed the real estate contract at issue. Dianna testified that at the closing she "really didn't know" if they were purchasing the minerals.

The Givenses also cite the deposition testimony of the real estate agent who handled the negotiations. The agent testified that at the time of the final offer "the Wards understood they were not purchasing the mineral rights." And at the time they signed the sales contract, they continued to understand that they were not purchasing the mineral rights.

In addition, the Givenses cite Dianna's testimony that, after the closing, she "maybe in a hypothetical sense" posted a message on the website of the National Association of Royalty Owners[5] to the effect that she "thought that [she] had not purchased the minerals and evidently there was some—something wrong with the deed."

The Wards refer to Appellant Shannon Kraus's deposition testimony which the Wards contend indicates that Kraus "instructed their agent who drafted the contractual language to disclose the mineral lease to the Wards." However, Kraus actually testified

---

[5] The Givenses stated in their summary-judgment response that Dianna's web postings "indicat[e] that [the Wards] knew they weren't buying the mineral rights but that such rights were inadvertently conveyed by deed." The excerpts of Dianna's deposition testimony attached to the response also make numerous references to these postings, which were apparently collectively identified at the deposition as "Exhibit Number 8." However, it does not appear that the Givenses attached this exhibit to their summary-judgment response, so the contents of the web postings are not part of the summary-judgment record.

that the agent disclosed the existence of the lease but she never instructed him to do so. The Wards also rely on Dianna's deposition testimony that she interpreted the contract to mean that the Givenses were only disclosing the existence of the lease and the Wards were getting the minerals. Similarly, Elvis Ward provided deposition testimony that they "really didn't know" whether they were getting the minerals but they "had a pretty good speculation" that they were.

Finally, the Wards refer to a lawsuit the Givenses filed in a Tarrant County district court against Alamo, Sewell, and their agent in which they allege, "Unfortunately, the Contract failed to clearly reserve Plaintiffs' mineral interest in the Property." Although the Wards do not use the term "judicial admission" when referring to this allegation in their summary-judgment pleadings or in their brief, such is the only basis on which pleadings can constitute summary-judgment evidence. *Compare Whittington v. City of Austin*, 174 S.W.3d 889, 900 (Tex. App.—Austin 2005, pet. denied) (pleadings are not competent summary-judgment evidence), *with Beasley v. Burns*, 7 S.W.3d 768, 770 (Tex. App.—Texarkana 1999, pet. denied) (party may offer pleadings which constitute judicial admissions as summary-judgment evidence).

"A judicial admission must be a clear, deliberate, and unequivocal statement." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (quoting *Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996) (per curiam); *Bowen v. Robinson*, 227 S.W.3d 86, 92 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Here, a statement that the contract "failed to clearly reserve" the mineral interest does not constitute "a clear, deliberate, and unequivocal statement" that the contract

"did not reserve" the mineral interest. Thus, the statement in question does not constitute a judicial admission. *See Bowen*, 227 S.W.3d at 92-93.

However, because the Givenses failed to object to this evidence, the statement is part of the summary-judgment record for purposes of our review. Viewed in the light most favorable to the non-movants (the Givenses in this instance), this statement is at best evidence that the contract is ambiguous.

In summary, the parties have advanced competing evidence and interpretations of that evidence regarding whether the parties' original agreement was for the Givenses to reserve the minerals in the subject property. Thus, genuine issues of material fact remain on this question.

### 2. *Mistake*

The Givenses contend that any variance between the deed and the parties' original agreement was a mistake on their part of which the Wards had knowledge. The Wards respond that sustaining the Givenses' contention "would create an undue burden on all vendees of real estate. It would require the purchaser, after the fact, to ask the seller if the contract the seller signed . . . was really what the seller intended to sell." We disagree.

Under the case law already cited, a "[u]nilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake." *Davis*, 750 S.W.2d at 768; *accord Navasota Res.*, 249 S.W.3d at 539; *Atlantic Lloyds Ins.*, 137 S.W.3d at 213. This is not some novel legal theory. It has been recognized for decades by various courts and by respected commentators. *See, e.g.,* RESTATEMENT (SECOND) OF

CONTRACTS § 155 cmt. b, § 166 cmt. a (1981); RESTATEMENT OF CONTRACTS § 505 (1932); 27 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 70:105 (4th ed. 2003); 3 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 1497. Our research has disclosed six Texas cases applying this principle to the reformation of a deed and three others to reformation of other instruments affecting an interest in real property. *See Davis*, 750 S.W.2d at 767-68; *Hill*, 973 S.W.2d at 775; *Escamilla v. Estate of Escamilla*, 921 S.W.2d 723, 725-26 (Tex. App.—Corpus Christi 1996, writ denied); *Hamberlin*, 770 S.W.2d at 13-14; *Spellman v. Am. Universal Inv. Co.*, 687 S.W.2d 27, 31 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); *Warren v. Osborne*, 154 S.W.2d 944, 946-47 (Tex. Civ. App.—Texarkana 1941, writ ref'd w.o.m.); *see also Parker v. HNG Oil Co.*, 732 S.W.2d 754, 755-56 (Tex. App.—Corpus Christi 1987, no writ) (release of mineral lease); *Ace Drug Marts, Inc. v. Sterling*, 502 S.W.2d 935, 939-40 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.) (lease); *Coker v. Hughes*, 307 S.W.2d 354, 359-60 (Tex. Civ. App.—Amarillo 1957, no writ) (lease). Our research has also disclosed eleven Texas decisions either applying this principle to the reformation of other contracts or recognizing the validity of the principle.[6] Therefore, we do not agree that

---

[6]    *See Mullins v. Mullins*, 889 S.W.2d 550, 552-53 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (indemnity agreement); *Marcuz v. Marcuz*, 857 S.W.2d 623, 627-28 (Tex. App.—Houston [1st Dist.] 1993, no writ) (property settlement agreement); *First Nat'l Bank of Andrews v. Jones*, 635 S.W.2d 950, 952-53 (Tex. App.—Eastland 1982, writ ref'd n.r.e.) (note); *Cambridge Cos.*, 602 S.W.2d at 308-09 (note); *Automobile Ins. Co. of Hartford v. United Elec. Serv. Co.*, 275 S.W.2d 833, 839 (Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.) (insurance policy); *see also Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526, 539 (Tex. App.—Waco 2008, pet. filed); *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.*, No. 01-05-00988-CV, 2007 WL 2130373, at *7 (Tex. App.—Houston [1st Dist.] July 26, 2007, no pet.); *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 213 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Seymour v. Am. Engine & Grinding Co.*, 956 S.W.2d 49, 58 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 903-04 (Tex. App.—Corpus Christi 1989), *rev'd in part on other grounds*, 811

application of this established principle to the Givenses' reformation claim will turn real estate law on its head or "create an undue burden on all vendees of real estate" as the Wards claim.

Here, Kraus provided deposition testimony that she read the deed before signing it and noticed that it stated that there were no reservations. According to her, they "were told" that the mineral reservation "would be under encumbrances." A review of the deed confirms that the mineral rights at issue are identified in Exhibit "B" to the deed under the heading "Encumbrances" which are also referenced in the "Exceptions to Conveyance and Warranty" clause[7] of the deed. Item 5(b) of the "Encumbrances" exhibit states, "All oil, gas and other minerals, the royalties, bonuses, rentals and all other rights in connection with the same are excepted herefrom as set forth in instrument recorded in Volume 415, Page 368 of the Deed Records of Johnson County, Texas." Kraus testified that an Alamo representative told them that this provision "reserved the minerals." Thus, there is summary-judgment evidence that the Givenses believed that the deed reserved their mineral interests.

---

S.W.2d 931 (Tex. 1991); *Am. Nat'l Ins. Co. v. Gifford-Hill & Co.*, 673 S.W.2d 915, 922 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

[7]   This clause reads as follows:

Exceptions to Conveyance and Warranty: This Deed is executed by Grantor and accepted by Grantee subject to liens described as part of the Consideration and any other liens described in this deed as being either assumed by Grantee or subject to which title is taken by Grantee; all validly existing and enforceable rights, interests, estates, restrictions, easements and liability for standby fees and taxes in connection with those matters described on Exhibit "B" attached to this Deed and incorporated by reference (the "Encumbrances").

From the perspective of the Wards, they were on notice that the deed contained no mineral reservation whenever they received their copy.[8]  Dianna conceded in her deposition testimony that, after the closing, she "maybe in a hypothetical sense" posted a message on the website of the National Association of Royalty Owners to the effect that she "thought that [she] had not purchased the minerals and evidently there was some—something wrong with the deed."  In addition, Alamo notified the Wards' attorney by letter dated June 29, 2005 that the deed contained no mineral reservation and by letter to counsel dated July 19 asked that the Wards execute a correction deed to include the omitted mineral reservation.  Although Dianna testified that she does not recall ever seeing the first letter, she "thinks" she remembers getting a letter asking them to sign a correction deed.

There is no summary-judgment evidence which establishes whether the Wards realized at the closing that the deed contained no mineral reservation.  Nevertheless, reformation of a deed has been awarded even when neither party realized on the date of conveyance that there was a mistake in the deed.  *See Hatch*, 110 S.W.3d at 520;[9] *see also Lathem v. Richey*, 772 S.W.2d 249, 253 (Tex. App.—Dallas 1989, writ denied) ("The presumption that a grantor has immediate knowledge of a mistake in a deed is, however, rebuttable."); *accord Sullivan v. Barnett*, 471 S.W.2d 39, 45 (Tex. 1971) (statute of limitations begins to run on claim for reformation of deed "when the mutual mistake

---

[8]     According to a notation on the first page of the deed, the county clerk was to mail it to the Wards "after recording."  The deed was recorded on December 8, 2004, five days after it was executed.

[9]     In *Hatch*, the seller did not discover the mistake for more than 3 years while the buyer discovered the mistake within 3 days.  *See Hatch v. Williams*, 110 S.W.3d 516, 523 & n.3 (Tex. App.—Waco 2003, no pet.).

was, or in the exercise of reasonable diligence should have been, discovered"); *Cullins v. Foster*, 171 S.W.3d 521, 531 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (same).

Accordingly, the parties have advanced competing evidence and interpretations of that evidence regarding whether the deed varies from the parties' original agreement with regard to a reservation of minerals and whether this was due to a mistake on the part of the Givenses of which the Wards had (or acquired) knowledge. Thus, genuine issues of material fact remain on the question of whether the deed varies from the parties' original agreement because of a mutual mistake.

### 3. Summary

Because genuine issues of material fact remain on the meaning of the parties' original agreement and on whether the deed varies from that agreement because of a mutual mistake, the Wards failed to conclusively establish their entitlement to judgment on their claim that they are entitled to a judicial declaration that they own the minerals at issue because the deed is "not a product of a mutual mistake." Therefore, we sustain the Givenses' fourth issue and Sewell's fourth issue.

### The Compliance Agreement

Sewell contends in his second issue and Alamo contends in its second issue that the court erred by denying their joint summary-judgment motion because the evidence conclusively establishes that the Wards breached the compliance agreement by refusing to sign the correction deed.

The compliance provision of the parties' "Acceptance of Title and Closing Agreements" reads as follows:

The undersigned agree to comply with all provisions of the real estate contract, Lenders [sic] closing instructions, or other documents executed in connection with the closing of this transaction. The undersigned further agree to fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the above mentioned real estate contract, Lender's closing instructions or other documents executed in connection with the closing of this transaction, including the payment of attorney's fees incurred in enforcing the terms of this compliance agreement.

Sewell and Alamo contend that the Wards have breached this agreement because they have refused to sign a correction deed with the mineral reservation allegedly required by the real estate contract. However, we have already determined that genuine issues of material fact remain on the question of whether the real estate contract included a reservation of minerals. The issue of whether the Wards have breached the compliance agreement cannot be resolved until it is determined whether the real estate contract included a reservation of minerals. Accordingly, the evidence does not conclusively establish that the Wards breached the compliance agreement. Therefore, we overrule Sewell's second issue and Alamo's second issue.

### Abatement

Sewell contends in his fifth issue that the court abused its discretion by denying the joint plea in abatement he filed with Alamo. They asked the court to abate the dispute between the Givenses and the Wards pending the resolution of their claims for specific performance of the compliance agreement. They further contended that "[i]t would be impractical for either [the Wards'] or [the Givenses'] Motions for Summary Judgment to be granted prior to this Court's ruling on Intervenors' request for [specific performance]."

We will assume without deciding that abatement may be appropriate in some circumstances for claims pending in the same lawsuit. "The obvious reasons for abatement . . . are the conservation of judicial resources, avoidance of delay, 'comity, convenience, and the necessity for an orderly procedure in the trial of contested issues.'" *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (quoting *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988)) (footnotes omitted); *accord Mission Res., Inc. v. Garza Energy Trust*, 166 S.W.3d 301, 326 (Tex. App.—Corpus Christi 2005, no pet.).

As we have explained, however, the issue of whether the Wards have breached the compliance agreement cannot be resolved until the dispute between the Wards and the Givenses has been resolved. For this reason, "the necessity for an orderly procedure" of the contested issues requires that the dispute between the Wards and the Givenses be first resolved. Accordingly, the court did not abuse its discretion by denying the plea in abatement. Thus, we overrule Sewell's fifth issue.

## Conclusion

The parties' respective claims hinge primarily on the meaning to be given the real estate contract. Genuine issues of material fact remain on the question of whether that contract includes a reservation of minerals. Therefore, summary judgment was not proper on any of the parties' claims. Because of our disposition of the issues discussed, we need not address any of the remaining issues. *See* TEX. R. APP. P. 47.1. We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion. *See Sarandos*, 25 S.W.3d at 814.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
     (Chief Justice Gray concurring in part with note)*
Reversed and remanded
Opinion delivered and filed October 8, 2008
[CV06]

*     ("Chief Justice Gray concurs, in part, with the judgment. A separate opinion will not issue. He notes, however, the deed is unambiguous and the Wards are entitled to that portion of the trial court's declaratory judgment. While I do not join the basis or reasoning as expressed in the Court's opinion, I agree there are unresolved fact issues that prevent the affirmance of the judgment and require that it be remanded for further proceedings.")