**Affirmed in Part and Reversed and Remanded in Part and Majority and Concurring and Dissenting Opinions filed October 30, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00348-CV

---

## DEVON ENERGY PRODUCTION COMPANY, L.P., Appellant

## V.

## KCS RESOURCES, LLC, Appellee

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-15225**

---

## M A J O R I T Y   O P I N I O N

In this dispute over ownership of property in Louisiana, appellant Devon Energy Production Company, L.P., contends that the trial court erred in granting summary judgment in favor of appellee KCS Resources, LLC, on the ground that the trial court lacked subject matter jurisdiction over Devon's action for relief under the Uniform Declaratory Judgments Act. In a cross-issue, KCS contends the trial court erred in concluding that it also lacked jurisdiction to decide KCS's

counterclaim for attorney's fees under the Act. We affirm in part and reverse and remand in part.

## BACKGROUND

Devon and KCS are parties to a Purchase and Sale Agreement, effective February 22, 2005, in which Devon agreed to sell to KCS certain oil and gas assets in Texas, Louisiana, and Mississippi (the PSA). The assets to be sold were listed in Exhibit A to the PSA, which was further divided into three sub-parts. Exhibit A-3 of the PSA identified "Leases and Lands" to be conveyed, including oil and gas leases, wells, mineral interests, and associated assets located in DeSoto Parish, Louisiana. Under the PSA, the assets included all of Devon's right, title, and interest in and to the oil and gas leases, lands, and wells described in Exhibit A as follows:

> *2.1 Purchase and Sale.* Subject to the terms and conditions of this Agreement, [Devon] agrees to sell, and [KCS] agrees to purchase and pay for, *all of [Devon]'s right, title and interest in and to the following* (less and except for the Excluded Assets, collectively, the "*Assets*"):
>
> (a) the *oil and gas leases* more particularly described in *Exhibit A*, subject to any depth restrictions described in *Exhibit A* (collectively, the "*Leases*"), *together with any and all other rights, titles, and interests of [Devon] in and to (i) the leasehold estates created thereby*, subject to any depth restrictions described in *Exhibit A* and to the terms, conditions, covenants, and obligations set forth in the Leases and/or *Exhibit A* and (ii) *the lands covered by the Leases* or included in Units with which the Leases may have been pooled or unitized, subject to any depth restrictions described in *Exhibit A* (the "*Lands*"), *including in each case, without limitation, fee interests,* royalty interests, overriding royalty interests, production payments, net profits interests, carried interests, reversionary interests, *and all other interests of any kind or character*;
>
> (b) *all oil and gas wells located on the Leases and the Lands* or on other leases or lands with which the Leases and/or the Lands

2

may have been pooled or unitized (collectively and including the wells set forth on *Exhibit A*, the "*Wells*"), and all Hydrocarbons produced therefrom or allocated thereto.

(Emphasis added). The PSA also included a forum selection clause specifying that Texas law applied and that all actions arising out of or related to the PSA would be exclusively litigated in Harris County.

After about six weeks of due diligence, the parties closed the deal on April 13, 2005. At the closing, Devon executed various deeds conveying the assets to KCS, including a "Deed, Assignment and Bill of Sale" conveying the DeSoto Parish properties (the DeSoto Deed). Although the parties had negotiated revisions to some of the deeds during the due diligence period, Exhibit A to the DeSoto Deed contained the same properties that were previously listed on Exhibit A-3 of the PSA, with no revisions other than the addition of recording information. On April 18, 2005, the DeSoto Deed was recorded in the public records of DeSoto Parish.

About five years later, a dispute arose between KCS and Devon concerning the scope of the mineral interests Devon conveyed to KCS in DeSoto Parish. That dispute is the subject of this lawsuit. KCS contends that Devon intended to convey all of its right, title, and interest in two mineral servitudes[1] known as the "Olin Mathieson Servitude" and the "Riverwood Servitude" burdening ten sections of land. Conversely, Devon maintains that its conveyance was restricted to specific wells or wellbores located within the two mineral servitudes. For convenience, we will refer to the properties at issue as the "Disputed Properties."

In 2010, after Devon learned that KCS had mortgaged some of the Disputed

---

[1] A mineral servitude is "the right of enjoyment belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." La. Rev. Stat. § 31:21.

3

Properties, Devon filed a "Petition to Quiet Disturbance" in Louisiana seeking to cancel KCS's mortgage on those mineral interests. Devon contends that, after it filed that petition, EXCO Resources, Inc., another oil and gas company, informed Devon that KCS was claiming an interest in wells in which Devon had retained an interest under the PSA. Recognizing that Devon and KCS "had different views regarding what interests were intended to be conveyed by the PSA," Devon argues that it filed this declaratory action in Texas in accordance with the PSA's forum-selection clause.

KCS disputes Devon's account. According to KCS, EXCO contacted both Devon and KCS in the fall of 2009 to confirm who owned the Disputed Properties in connection with EXCO's plans to drill new wells in the area and, rather than acknowledge KCS's ownership, Devon seized an opportunity "to re-gain the now highly valuable" mineral interests. According to KCS, Devon sought to maintain its suit in both Louisiana and Texas by challenging the conveyance of different sections of the Disputed Properties in each action. KCS also argues that Devon's original pleadings in the Texas action sought a declaration as to the parties' rights under the DeSoto Deed and an adjudication of title to Louisiana real property, not declaratory relief under the PSA.

Litigation over the Disputed Properties proceeded in both Texas and Louisiana. In response to Devon's Louisiana petition, KCS answered and filed a counterclaim to have its rights under both the PSA and the DeSoto Deed declared in its favor, as well as alternative claims for fraud, misrepresentation, and violations of Louisiana law. KCS later amended its request for declaratory relief to seek a declaration as to the DeSoto Deed only. The Louisiana case has since been stayed pending the completion of the present case.

In the Texas action, KCS filed a motion to dismiss Devon's request for

4

declaratory relief. Because Devon originally sought a declaration as to the parties' rights under the PSA and the DeSoto Deed in the Texas action, KCS argued that the Texas court lacked subject matter jurisdiction to interpret the DeSoto Deed and declare title to the Disputed Properties in Louisiana. The trial court treated KCS's motion as a plea to the jurisdiction and conditionally granted it, but allowed Devon the opportunity to amend its original petition.

Devon then amended its pleading to seek a declaration of the parties' intent regarding the conveyance of the Disputed Properties under the PSA alone. In response, KCS again challenged the court's jurisdiction over Devon's amended claims, arguing that the court must look first to the DeSoto Deed, not the PSA, because the conveyance provisions of the PSA had been merged into and were superseded by the conveyance provisions of the later-executed DeSoto Deed. The trial court denied KCS's motion, but stated that it would be willing to revisit the issue of subject matter jurisdiction later in the proceedings.

KCS later challenged the trial court's subject matter jurisdiction for a third time in a motion for summary judgment, arguing that a declaration of the PSA would not resolve the parties' dispute and would be an advisory opinion on a question of title to land in Louisiana. Although the trial court held a hearing on the motion, it made no ruling for several months. As the trial date approached, KCS amended its pleadings to file counterclaims for declaratory relief and alternatively, claims for fraud and negligent misrepresentation, subject to its jurisdictional challenge. Devon also filed a second amended petition.

The trial court granted KCS's motion for summary judgment on March 27, 2012, and ordered that Devon "take nothing" on its claims. Devon filed a motion to modify the trial court's summary judgment order, arguing that the trial court's ruling on the merits was improper and that the proper relief was to dismiss

5

Devon's claims for lack of subject matter jurisdiction. Shortly after that, KCS non-suited all of its counterclaims except for its counterclaim for attorney's fees and costs as provided in the declaratory judgments act.

Almost a year later, on March 25, 2013, the trial court granted Devon's motion to modify and entered a final judgment dismissing Devon's declaratory judgment claims and KCS's attorney's fees claim for lack of subject matter jurisdiction. Both parties have appealed the final judgment.

## ANALYSIS OF DEVON'S ISSUE

### I.    Summary of the Parties' Arguments

In its motion for summary judgment, KCS argued that the trial court lacked jurisdiction to interpret the conveyance terms of the PSA because any decision on that issue would be an impermissible advisory opinion that would not resolve the parties' dispute concerning the ownership of the Disputed Properties. KCS contended that the declaratory relief Devon seeks would be advisory for three reasons: (1) the PSA merged into the DeSoto Deed, so only the deed controls the respective rights of the parties; (2) the parties' intent under the PSA was superseded and mooted by the execution of the DeSoto Deed; and (3) the statute of frauds bars enforcement of any declaration since the PSA lacks the requisite recording information contained only in the DeSoto Deed. According to KCS, the final DeSoto Deed establishes the interests that were actually conveyed, and therefore any disagreement between the parties concerning ownership of the Disputed Properties must be resolved by a Louisiana court because the law is well-settled that Texas courts lack subject matter jurisdiction to determine title to real property located in another state.

On appeal, Devon argues that the declaratory relief it seeks does not amount

6

to an advisory opinion concerning a question of title to land in Louisiana because the PSA was not merged into or superseded by the DeSoto Deed, the dispute regarding the meaning of the PSA is not moot, and the statute of frauds does not apply. Devon also contends that its claims arise directly out of the PSA and so are governed by the PSA's forum selection and choice of law clause providing for litigation of the action in Harris County and the application of Texas law. Further, Devon asserts that Texas courts have jurisdiction to interpret contracts involving land in another state so long as the case does not involve a "naked question of title," and that this is such a case.

## II.     Standard of Review and Applicable Law

We review a trial court's grant of summary judgment de novo. *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 607 (Tex. 2013). To prevail on its motion, KCS was required to prove that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). We take as true all evidence favorable to Devon, the non-movant, and we indulge every reasonable inference and resolve any doubts in Devon's favor. *See Joe*, 145 S.W.3d at 157. We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Id.*

Subject matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The absence of subject matter jurisdiction may be raised by a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  In reviewing a challenge to the court's subject matter jurisdiction, the trial court may review the pleadings and any other evidence relevant to the subject matter jurisdiction issue. *Id.* at 554–55. Whether a trial court

7

has subject matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Under Article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions. *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam); *see Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 147 (Tex. 2012) ("The Texas Constitution—the source of the requirements of justiciability in Texas—bars our courts from rendering advisory opinions and limits access to the courts to those individuals who have suffered an actual, concrete injury."). An advisory opinion decides an abstract question of law without binding the parties, and a judgment based on an advisory opinion addresses only a hypothetical injury rather than remedying an actual or imminent harm. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. The prohibition on advisory opinions likewise precludes the courts from deciding moot controversies. *Klein v. Hernandez*, 315 S.W.3d 1, 3 (Tex. 2010).

The Uniform Declaratory Judgments Act (UDJA) allows a person interested under a written contract to have determined any question of construction or validity arising under the contract and to "obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem Code § 37.004(a). But the Act does not create or enlarge a trial court's subject matter jurisdiction; it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. Thus, a declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the declaration will resolve the controversy. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *see also* Tex Civ. Prac. & Rem. Code § 37.008 ("The court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy

8

giving rise to the proceeding.").

## II.     Analysis of the Parties' Arguments

### A.     Merger of the PSA into the DeSoto Deed and Mootness

#### 1.     The PSA is Merged Into, Superseded By, and Mooted by the DeSoto Deed.

In its summary-judgment motion, KCS first argued that any decision construing the PSA would be an advisory opinion because the DeSoto Deed is the controlling instrument under the merger doctrine. The Supreme Court of Texas has long recognized that the conveyance provisions in a contract for the sale of real property merge into the deed executed in accordance with the contract. *Alvarado v. Bolton*, 749 S.W.2d 47, 48 (Tex. 1988).

The merger doctrine requires courts to look to the deed alone in evaluating the parties' respective rights even if the terms of the deed vary from the contract. *Id.* ("Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties."); *see also Turberville v. Upper Valley Farms, Inc.*, 616 S.W.2d 676, 678 (Tex. Civ. App.—Corpus Christi 1981, no writ) ("Where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is functus officio, and the rights of the parties rest thereafter solely in the deed."). "The merger doctrine is an analogue of the parol evidence rule and functions to prevent enforcement of prior or contemporaneous transactions on the assumption that all agreements merged into the final executed contract." *See GXG, Inc. v. Texacal Oil & Gas*, 977 S.W.2d 403, 415 (Tex. App.—Corpus Christi 1998, pet. denied).

For example, in *Commercial Bank, Unincorporated, of Mason, Tex. v. Satterwhite*, the plaintiff sought to cancel a general warranty deed conveying to the

defendant the plaintiff's mother's and her late husband's community interests in the family ranch. *See* 413 S.W.2d 905, 906 (Tex. 1967). The mother had entered into a contract for sale with the defendant to sell "all of *her* right title and interest in and to" the ranch. *Id*. at 909 (emphasis added). The deed that she executed individually and in her capacity as executrix of her husband's estate, however, conveyed specifically described tracts encompassing the ranch. *Id*. The court held that pursuant to the merger doctrine, in the absence of fraud, accident, or mistake, "all prior agreements entered into between the parties [were] considered merged in the deed" and it refused to reform the deed to reflect that only the mother's community interest in the ranch had been conveyed. *Id*.

Similarly, in *Carter v. Barclay*, 476 S.W.2d 909, 915 (Tex. Civ. App.—Amarillo 1972, no writ), an action to quiet title to real property, the plaintiff argued that certain language in a contract to purchase land prevented the rights of the parties from merging into the deed, and that the contract and deed were cumulative of the parties' rights. The court held that the deed alone controlled the terms on which the property was conveyed and superseded any other agreement between the parties regarding the conveyance terms, the consideration, and the method of payment:

> [I]n the absence of fraud, accident or mistake in the execution, the deed, an absolute conveyance on its face, must be considered *the final expression and the sole repository of the terms upon which [the parties] have agreed with respect to the property conveyed*, the consideration and the method of payment. Although . . . certain rights of appellee are still governed under the contract, such as the furnishing of water, restrictions and easements, . . . the matter of consideration and method of payment were finalized in the deed which was an absolute conveyance of the property in question. . . . . *[T]he general warranty deed by its very nature has finalized and supersedes any other agreement between the parties* regarding consideration and method of payment . . . .

*Id.* at 914-15 (emphasis added) (internal citation omitted).

KCS argues that, as in these cases, the conveyance terms of the PSA merged into and were superseded by the DeSoto Deed when it was executed at closing. Consequently, a determination of the parties' intent under the PSA would be no more than parol evidence, admissible only in the event a Louisiana court finds that the conveyance terms of the DeSoto Deed were ambiguous or were procured by fraud. *See GXG, Inc.*, 977 S.W.2d at 416 ("principles of law permit referral to agreement upon which deed is founded to explain an ambiguity in deed"). Because the Louisiana court has made no such determination, and may never do so, the declaration Devon seeks would be premised on the happening of a future, hypothetical event. Thus, KCS argues, any such declaration would be advisory because it would not resolve the ownership of the Disputed Properties conveyed by the DeSoto Deed. *See Stop 'N Go Mkts. of Tex., Inc. v. Exec. Sec. Sys., Inc. of Am.*, 556 S.W.2d 836, 837 (Tex. Civ. App.—Houston [14th Dist.] 1977, no writ) (recognizing "[a] justiciable controversy does not exist and an advisory opinion is being sought if a party requests a court to render a declaratory judgment premised upon the happening of a future, hypothetical event").

KCS also argues that the declaration Devon seeks would be advisory because the issue of what interests the parties intended to convey under the PSA is mooted by the execution of the DeSoto Deed. Mootness is a component of subject matter jurisdiction. *See Valley Baptist Med. Ctr.*, 33 S.W.3d at 822. The mootness doctrine prevents courts from rendering advisory opinions, which they have no jurisdiction to issue. *Id.* A case becomes moot if there ceases to be a justiciable controversy between the parties, such as when "the issues presented are no longer 'live.'" *Heckman*, 369 S.W.3d at 162; *see also In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008, orig.

proceeding) ("An issue may become moot when a party seeks a ruling on some matter which, when rendered, would not have any practical legal effect on a then-existing controversy.").

We agree with KCS that any issue regarding what the parties intended to convey under the PSA is no longer live because the DeSoto Deed is the final expression and sole repository of the parties' agreement with respect to the properties conveyed. *See Satterwhite*, 413 S.W.2d at 909; *Carter*, 476 S.W.2d at 915. This conclusion is consistent not only with the case law but also with the practical application of the doctrine. Devon's own land manager testified that anyone seeking to determine what properties were actually conveyed to KCS would need to review the exhibits attached to the deeds executed at the closing of the transaction—not the exhibits attached to the PSA that was executed six weeks earlier—because the exhibits to the PSA were not revised to reflect any changes made when properties were removed or added to the deal as a result of the due-diligence process. The parties' agreement to apply Texas law to the construction of the PSA further compels the application of this settled Texas doctrine.

Applying the doctrine of merger, any interpretation of the PSA would not resolve the issue as to who owns the Disputed Properties because the final DeSoto Deed establishes the interests that were actually conveyed.[2] The declaration Devon seeks will have no determinative legal effect on the parties' controversy over ownership of the Disputed Properties conveyed by the DeSoto Deed, as only the Louisiana court has the ability to adjudicate title to realty. Because any declaration of the parties' intent under the PSA would not resolve the parties' dispute, the declaration Devon seeks would be advisory only and therefore the trial court lacks

---

[2] Because of our disposition of this issue, it is unnecessary to reach the parties' arguments concerning the applicability of the statute of frauds.

subject matter jurisdiction to consider it. *See, e.g.*, *Patterson v. Planned Parenthood of Houston and Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444.

## 2. Devon's Contrary Arguments Concerning Merger and Mootness are Unpersuasive.

Devon contends that the trial court erred in concluding that it lacked subject matter jurisdiction over the parties' dispute because the PSA was not merged into, superseded by, or mooted by the DeSoto Deed. Discussing the merger and superseded contract doctrines together with mootness, Devon argues these doctrines do not apply because (1) the PSA survived the closing and did not address the same subject matter as the DeSoto Deed; and (2) KCS made allegations of fraud and misrepresentation regarding the PSA and also sought reformation of the PSA. Because the PSA was neither merged into nor superseded by the DeSoto Deed, Devon asserts, the controversy regarding its meaning is not moot.

### (a) The Existence of Surviving Collateral Terms Does Not Preclude the Application of the Merger Doctrine to the Conveyance Terms.

First, Devon contends that the merger doctrine does not apply because the PSA created continuing rights and obligations that were independent of the conveyances within it. *See Harris v. Rowe*, 593 S.W.2d 303, 306–07 (Tex. 1979); *Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n*, 285 S.W.3d 45, 52 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Devon argues that the PSA contains a number of independent rights and obligations that survived closing, such as an agreement to cooperate in effectuating the intent of the PSA and detailed indemnification provisions. Devon also points to language in the DeSoto Deed that "the execution and delivery of this Assignment . . . shall not operate to release or impair any surviving rights and obligations of Assignor or Assignee under the

13

[PSA]." Further, Devon argues that as a practical matter, the parties continued to revise leases and assignments under the PSA even beyond the closing date, something they would not have done if the DeSoto Deed rendered the PSA moot.

In response, KCS does not dispute that certain provisions of the PSA survived beyond the execution of the deeds at the closing, but argues that Devon's argument ignores the actual dispute between them, which concerns the scope of the conveyance as it relates to the Disputed Properties rather than any of the PSA's surviving terms. We agree. Devon's cited authorities concern disputes over collateral terms, not disputes over terms of the conveyance that were merged into the subsequently executed agreement. For example, in *Harris v. Rowe*, the Texas Supreme Court held that an escrow agreement pertaining to funds for post-conveyance construction work was collateral to and independent of the conveyance terms in the purchase contract. 593 S.W.2d at 306–07. Likewise, in *Stanford Dev. Corp.*, the court of appeals held that arbitration provisions in homeowners' earnest money contracts created rights collateral to and independent of the deeds to their condominiums that were not merged into and extinguished by the subsequent deeds. 285 S.W.3d at 52.

Here, the dispute between Devon and KCS does not involve the PSA's surviving collateral terms, such as the right to transfer properties after closing. It involves the scope of the conveyance itself and whether Devon conveyed the Disputed Properties to KCS based on the descriptions provided in the DeSoto Deed. Under the PSA, Devon agreed to convey all of its "right, title and interest" in and to the described assets, and Devon points to nothing in the PSA indicating that the parties intended to retain some legal or equitable interest in those assets, and it is undisputed that the descriptions of the properties conveyed in the exhibits to both the PSA and the DeSoto Deed are the same. Devon's reliance on the

14

collateral-rights exception is misplaced and does not defeat the application of the merger doctrine.

In a related argument, Devon contends that the merger doctrine does not apply because the DeSoto Deed addressed only a small portion of the multistate assets identified in the PSA. *See, e.g., Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W.3d 445, 448–49 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("A merger occurs when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter."). Devon contends that it was clearly not the intent of the parties that the PSA be merged into, superseded by, or mooted by the DeSoto Deed because the parties included in the DeSoto Deed the statement that the Deed was "expressly made subject to" the PSA.

These arguments also fail because the parties' actual dispute is confined to the ownership of the Disputed Properties, which are addressed by both the PSA and the DeSoto Deed. None of Devon's authorities support its argument that because the PSA involves properties in addition to those conveyed in the DeSoto Deed, the merger doctrine does not apply to a property addressed by both instruments. That the deal included other assets in other states has no bearing on the parties' dispute over the assets conveyed in Louisiana. For the same reason, we reject Devon's argument that the DeSoto Deed's language that it is made "subject to" the PSA indicates the parties' intent that the PSA would not be merged into, superseded by, or mooted by the DeSoto Deed. The evidence shows that although revisions were made to the exhibits attached to the deeds during the due-diligence process, the exhibits to the PSA describing the properties to be conveyed were not correspondingly revised. Thus, the deeds, rather than the PSA, reflect the parties' final agreement as to which properties were conveyed to KCS. Moreover, as KCS

15

argues, if the conveyance terms of the DeSoto Deed were "subject to" the PSA, then the revisions the parties made to deeds during the due-diligence period would be irrelevant. Such a construction of the DeSoto Deed would also undermine the purpose of the merger doctrine. Therefore, both the evidence and the case law are consistent with the application of the merger doctrine in this case. *See Alvarado v. Bolton*, 749 S.W.2d at 48 (stating that when a deed is delivered and accepted as performance of a contract to convey, the contract is merged into the deed).

### (b)    KCS's Dismissed Counterclaims Do Not Preclude Application of the Merger Doctrine.

Second, Devon argues that the merger doctrine does not apply because KCS made allegations of fraud and misrepresentation regarding the PSA, and also sought reformation of the PSA. *See, e.g., GXG Inc.*, 977 S.W.2d at 416 ("The doctrine of merger is inapplicable when there is an allegation of fraud, mistake, or accident, or an ambiguity in the contract."); *see also Givens v. Ward*, 272 S.W.3d 63, 68–69 (Tex. App.—Waco 2008, no pet.) (declining to apply merger doctrine when claim for reformation of deed required determination of parties' original agreement). But Devon's arguments against application of the merger doctrine based on KCS's counterclaims fail for two reasons.

First, KCS's fraud, misrepresentation, and reformation counterclaims, which were expressly made subject to KCS's jurisdictional challenge, were nonsuited and dismissed in May 2012. Thus, the counterclaims were not live pleadings when the final order on KCS's summary-judgment motion was modified and signed on March 25, 2013.[3] Second, all of KCS's counterclaims were in opposition to

---

[3] In its reply brief, Devon argues that KCS's counterclaims were live pleadings when the trial court initially granted KCS's summary-judgment motion on March 27, 2012, and that the trial court's final judgment on March 25, 2013 "did nothing to alter its earlier March 27, 2012 order." We note that the 2012 order denied Devon's request for declaratory relief and granted a take-nothing judgment against Devon, while the 2013 order dismissed Devon's declaratory

16

Devon's requested declarations as to the PSA and called into question Devon's conduct leading up to the execution of the PSA, not the DeSoto Deed. The cases Devon cites are distinguishable because they each address allegations of fraud or reformation relating to execution of the subsequent deed, not the preliminary contracts for sale like the PSA. As KCS acknowledges, it could not have sought an interpretation of the DeSoto Deed because the trial court lacks jurisdiction over such a claim.

We conclude that Devon has failed to demonstrate that the merger doctrine is inapplicable to this case.

## B. The PSA's Forum Selection Clause

Devon's lead appellate argument is that the trial court's ruling was erroneous because the PSA's forum selection clause requires that the parties' dispute be litigated in Harris County. This clause provides that the PSA and the parties' legal relations shall be governed by Texas law, that all parties to the PSA consent to the exercise of personal jurisdiction by Texas courts for any action arising out of the PSA or other transaction documents, and that "[a]ll actions or proceedings with respect to, arising directly or indirectly in connection with, out of, related to or from" the PSA "shall be exclusively litigated in courts having sites in Houston, Harris County Texas."

Devon argues that its declaratory judgment action must be litigated in Harris County because the relief Devon sought in its amended petition required a judicial determination of the intent of the parties to the PSA. Devon notes that Texas' public policy strongly favors the freedom of parties to contract, so long as their

judgment action for lack of subject matter jurisdiction and also dismissed KCS's counterclaim for attorney's fees. Although the court ruled in KCS's favor in both orders, the basis for the rulings and relief granted are distinctly different. Therefore, on these facts, we look to the state of the pleadings at the time the trial court signed its final judgment.

17

agreement does not violate the law or public policy. *See BMG Direct Mktg, Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex. 2005); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129–30 & n.11 (Tex. 2004). Therefore, Devon contends, its forum selection clause "should be given full effect." *See In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010).

But the trial court did not rule that the PSA's forum selection clause was unenforceable; it ruled that the trial court lacked subject matter jurisdiction over Devon's declaratory judgment. Devon does not argue that the forum selection clause somehow confers subject matter jurisdiction on the court, nor do Devon's cited cases so hold. The law is well settled that parties may by agreement consent to personal jurisdiction and venue in a given court, but subject matter jurisdiction cannot be conferred merely by agreement of the parties. *See, e.g.*, *Burke v. Satterfield*, 525 S.W.2d 950, 953 (Tex. 1975) ("It is also fundamental . . . that the subject matter jurisdiction of a court cannot be enlarged by an agreement between the parties or a request that the court exceed its powers."); *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 461 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any stage of a proceeding."). Therefore, Devon's reliance on this clause is misplaced because the presence of the forum selection clause in the PSA cannot confer subject matter jurisdiction where it does not otherwise exist.

## C.     Adjudication of Title to Land in Another State

Devon next argues that Texas courts have subject matter jurisdiction to determine obligations under a contract that may involve land located in another state, and that this action is such a case. According to Devon, the trial court has jurisdiction over this declaratory judgment action because it does not involve a "naked question of title."

18

As Devon acknowledges, Texas courts have no subject matter jurisdiction to adjudicate title to realty, including interests in oil and gas leases, in another state or country. *See, e.g.*, *Trutec Oil & Gas, Inc. v. Western Atlas Int'l, Inc.*, 194 S.W.3d 580, 583 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Holt v. Guerguin*, 163 S.W. 10, 12 (Tex. 1914)); *Kelly Oil Co, Inc. v. Svetlik*, 975 S.W.2d 762, 764 (Tex. App.—Corpus Christi 1998, pet. denied); *Miller v. Miller*, 715 S.W.2d 786, 788 (Tex. App.—Austin 1986, writ ref'd n.r.e.). But a Texas court with jurisdiction over the parties may enforce a party's personal or contractual obligation that indirectly involves property in another state. *See Tex. & Pac. Ry. Co. v. Gay*, 26 S.W. 599, 605–06 (Tex. 1894); *Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764, 766 (Tex. App.—El Paso 1993, pet. denied). For example, a Texas court may compel a party over whom it has jurisdiction to execute a conveyance of a real property interest situated in another state. *See McElreath v. McElreath*, 345 S.W.2d 722, 727–28 (Tex. 1961). Some courts have described the distinction as whether the case involves a "naked question of title." *See, e.g.*, *Hartman*, 863 S.W.2d at 766.

To determine the nature of Devon's action, we look to Devon's pleadings and the relevant evidence. *See Trutec Oil & Gas, Inc.*, 194 S.W.3d at 583–88 (rejecting appellant's contention that its action was only "tangentially" related to real property and affirming trial court's dismissal of appellant's claims for lack of subject matter jurisdiction when a review of the pleadings and evidence demonstrated that appellant's core complaint was that that it had been wrongfully deprived of the functional equivalent of oil and gas leases in Nigeria). In Devon's second amended petition, Devon sets out in detail the dispute between it and KCS over the extent of the mineral interests conveyed.[4] Devon describes the nature of

---

[4] KCS argues that the operative pleading is Devon's first amended petition, and not the

19

the present action as seeking "a determination of the parties' intent with respect to certain Louisiana mineral interests described in Exhibit A-3 of the PSA." In its request for relief, Devon further states:

> By the present action, Devon does not seek a construction of the [DeSoto Deed], or a determination or adjudication of title to the Louisiana properties listed in the PSA. Rather, Devon seeks a construction of the PSA and the determination of the parties' intent under the PSA regarding the mineral interests the PSA was intended to encompass. Such an action must necessarily precede any action to adjudicate title. . . .

Devon then requests specific declarations that (1) the parties intended to include in "the PSA transaction" only Devon's interest in specifically named wells located on specific sections of the lands described on Exhibit A-3 to the PSA pertaining to DeSoto Parish, Louisiana, and not all of Devon's right, title and interest in the mineral servitudes; and (2) the parties intended to exclude from "the PSA transaction" three additional sections of land in DeSoto Parish, Louisiana.

Throughout its pleading, Devon insists that the controlling document is the PSA and not the DeSoto Deed, and restricts its requested relief to an interpretation of the parties' intent under the PSA. It is evident, however, that the relief Devon ultimately seeks is the resolution of the disagreement between it and KCS as to which of them owns the Disputed Properties in Louisiana. Notably, Devon first filed suit in Louisiana, claiming that it owned the mineral interests KCS had mortgaged. And when Devon originally filed this lawsuit in Texas, it requested declarations regarding ownership of the Disputed Properties under both the DeSoto

---

second amended petition, which Devon filed after KCS moved for summary judgment but before the trial court's judgment was signed. Devon's first amended petition did not request specific declarations, but set out each party's contentions concerning the Disputed Properties and merely requests that the court declare the parties' intent under the PSA. For purposes of our analysis, however, the same dispute is reflected in both petitions.

Deed and the PSA. Only after the trial court granted KCS's plea to the jurisdiction did Devon amend its pleadings to argue that the dispute could be resolved by interpreting the PSA alone. Moreover, although Devon relies on cases like *McElreath* for the proposition that a Texas court has subject matter jurisdiction to order a conveyance of out-of-state property, neither party has requested such relief. Instead, Devon requests a declaration of the Louisiana mineral interests it intended to convey.

The other authorities on which Devon relies are also distinguishable. *See Hartman*, 863 S.W.2d at 766 (affirming trial court's jurisdiction to determine the validity of a contract for the sale and exchange of certain oil and gas properties in New Mexico because the "trial court was not required to determine ownership of land in New Mexico nor was any relief sought requiring the transfer of title to land in New Mexico"); *Protech of Tex., Inc. v. BP Oil Pipeline Co.*, No. 01-95-00270-CV, 1995 WL 737442, at *3 (Tex. App.—Houston [1st Dist.] Dec. 14, 1995, pet. denied) (mem. op., not designated for publication) (holding case did not simply involve "a naked question of title" and trial court had subject matter jurisdiction when plaintiff's claims sounded in tort, contract, and quasi-contract); *Askanase v. Maddox*, No. 05-91-01595-CV, 1992 WL 224588, *5 (Tex. App.—Dallas Sept. 10, 1992, writ denied) (mem. op., not designated for publication) (reversing plea to the jurisdiction because the "substance and purpose" of the claim was the recovery of money damages for breach of contract, tortious interference, and the declaration of contractual rights, not a transfer of property or adjudication of title).[5]

In contrast, the pleadings, factual allegations, and relief sought in this case

---

[5] We also note that *Protech* and *Askanase* are pre-2003 memorandum opinions designated "do not publish" and thus have no precedential value. *See* Tex. R. App. P. 47.2 cmt. (opinions issued in civil cases before 2003 and affirmatively designated "do not publish" lack precedential value).

demonstrate that the gravamen of Devon's action is the determination of the parties' existing property interests located in another state. Despite being couched as a request for declaratory relief under the UDJA, the relief Devon seeks is in essence a determination of title to land in Louisiana—a matter over which the trial court lacks jurisdiction. *See Trutec Oil & Gas, Inc.*, 194 S.W.3d at 588; *Miller*, 715 S.W.2d at 789; *see also Renwar Oil Corp. v. Lancaster*, 276 S.W.2d 774, 776 (Tex. 1955) (in context of venue dispute, suit was in essence one for recovery of interest in land despite being cast as one for declaratory judgment).

## IV. Disposition of Devon's Appeal

We conclude that the trial court did not err in dismissing Devon's claims for lack of subject matter jurisdiction on the basis that Devon's requested declaratory relief sought an impermissible advisory opinion concerning Devon's conveyance of mineral interests located in Louisiana. We overrule Devon's issues and affirm that portion of the trial court's judgment granting summary judgment in favor of KCS.

## KCS'S CROSS-ISSUE

In one cross-issue, KCS contends the trial court erred in dismissing its counterclaim for attorney's fees under the UDJA for lack of subject matter jurisdiction. According to KCS, a trial court has jurisdiction to adjudicate a defendant's claim for costs and attorney's fees when the defendant succeeds on its claim that the trial court lacks subject matter jurisdiction over the plaintiff's claim for declaratory relief.

In response, Devon argues that when a trial court lacks subject matter jurisdiction over a case from the time of filing, the only action the court may take is to dismiss the case. To hold otherwise would be contrary to controlling case law,

the plain language of the UDJA, and those courts which have distinguished between cases in which the court had subject matter jurisdiction and lost it and those in which the court never properly acquired subject matter jurisdiction. As above, when reviewing whether subject matter jurisdiction exists, we review the trial court's ruling de novo. *Miranda*, 133 S.W.3d at 228.

## A.    Attorney's Fees Under the UDJA

In any proceeding under the UDJA, the court "may award costs and reasonable and necessary attorneys' fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Under the UDJA, a party defending a suit brought under the UDJA may be awarded its reasonable and necessary attorney's fees. *Bradt v. State Bar of Tex.*, 905 S.W.2d 756, 760 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

Devon argues broadly that if KCS is correct that the trial court lacked subject matter jurisdiction over Devon's claims, then the trial court likewise lacked subject matter jurisdiction to award KCS its costs and attorney's fees. *See Goss v. City of Houston*, 391 S.W.3d 168, 176 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("Subject matter jurisdiction is essential to the authority of the courts to decide a case."); *Little v. Tex Bd. of Law Examiners*, 334 S.W.3d 860, 862 (Tex. App.—Austin 2011, no pet.) ("Failure to comply with a jurisdictional requirement deprives the trial court of the power to act, other than to determine that it lacks jurisdiction."); *see also Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (per curiam) (stating that a judgment is void if it is apparent that the court

23

rendering the judgment lacks subject matter jurisdiction). But the trial court's determination that it lacked subject matter jurisdiction over Devon's claims does not necessarily mean that it had no authority to consider KCS's counterclaim for fees and costs in defending the lawsuit.

### 1. KCS's authorities are on point and persuasive.

KCS points to two cases expressly holding that a trial court maintains jurisdiction over a counterclaim for attorney's fees under the UDJA despite the dismissal of the plaintiff's declaratory judgment action for lack of subject matter jurisdiction. *See Castro v. McNabb*, 319 S.W.3d 721, 735–36 (Tex. App.—El Paso 2009, no pet.); *Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV, 2011 WL 6118573, at *8 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (mem. op.). In *Castro*, the court examined the plain language of section 37.009 and determined that the UDJA "does not require a judgment on the merits of the dispute as a prerequisite to a fee award." 319 S.W.3d at 735. Accordingly, the court concluded that

> Castro invoked the entire [UDJA] when she filed suit. Her failure to make the City a party to the suit meant that any declaration sought does not change the nature of the proceedings below. Because this was a proceeding under the [UDJA], the trial court properly exercised jurisdiction under Section 37.009 to award attorney's fees to McNabb.

*Id.* at 735–36. The *Zurita* court reached the same conclusion, holding that the dismissal of a clam under the UDJA for lack of subject matter jurisdiction does not preclude the trial court from awarding attorney's fees under the statute to the party who succeeded in having the claims dismissed. *See Zurita*, 2011 WL 6118573, at *8.

Devon asserts, however, that these cases are "non-controlling" and adverse to decisions of the Houston appellate courts. As support for its contention, Devon

24

relies on *Graves v. Diehl*, No. 01-00-00412-CV, 2006 WL 1699527 (Tex. App.—Houston [1st Dist.] June 22, 2006, pet. denied) (mem. op.), and *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253 (Tex. App.—Houston [14th Dist.] 1998, no pet.). But these cases are distinguishable and do not control the disposition of KCS's issue.

In *Reeves*, the plaintiff sought attorney's fees in connection with a breach of contract claim and an identical claim for declaratory relief. 978 S.W.2d at 256. This Court reversed the trial court's award of attorney's fees because the plaintiff recovered no damages and so could not recover attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. *Id.* at 257–58. Further, the court held that the plaintiff could not use a request for declaratory relief identical to his breach of contract claim "simply to pave the way to recover attorney's fees not otherwise available." *Id.* at 258–59. The *Reeves* court went on to note that the plaintiff's claim for declaratory relief "should have been dismissed by the trial court because it was moot" and therefore the plaintiff was not entitled to recover fees on the basis of either breach of contract or declaratory judgment. *Id.* at 259–60. In a single paragraph, the court addressed the defendant's second issue as follows:

> In its second point of error, [the defendant] argues that even if there was a legal basis for an award of attorney's fees to [the plaintiff], the court abused its discretion and, if anything, should have awarded fees to [the defendant]. Having found no legal basis for awarding attorney's fees to [the plaintiff] we likewise find no legal basis for awarding such fees to [the defendant]. Therefore, [the defendant's] second point of error is overruled.

*Id.* at 260. In other words, having concluded that the plaintiff improperly invoked the UDJA to request the same relief already sought under his breach of contract claim, the court held that the UDJA was not a proper procedural vehicle to award

25

either party attorney's fees. In contrast, Devon's UDJA claim was not duplicative of any other claim or urged solely for the purpose of obtaining attorney's fees; Devon properly invoked the UDJA when it filed its original petition seeking a declaration of the rights, obligations, and legal status of the parties under the PSA and the DeSoto Deed.

*Graves* is factually distinguishable because in that case only the defendants sought affirmative declaratory relief and attorney's fees. The defendants' requested relief was denied for lack of subject matter jurisdiction, so fees were not warranted. *See* 2006 WL 1699527, at *9. The *Graves* court's decision was also based on its determination that the declaratory judgment and fee award were an abuse of discretion because the lawsuit did not involve the construction of a deed to the defendants' property as recited in the trial court's judgment; it involved the manner in which the defendants made use of their property, and no deed was even offered into evidence. *Id.* at *10. Thus, the court concluded there was no basis in the record for the trial court to award either a declaratory judgment or attorney's fees under the UDJA. *Id.* This was not a case in which the fees were incurred solely in defense of a plaintiff's UDJA claim.

We also note that more recently, the same court has held, consistent with *Castro* and *Zurita*, that the trial court had the power to award attorney's fees under the UDJA even though it had dismissed the plaintiff's declaratory judgment claim for lack of jurisdiction. *See Feldman v. KPMG LLP*, 438 S.W.3d 678, 685–86 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Thus, the decisions in *Graves* and *Reeves* do not preclude this Court from holding that the trial court maintained jurisdiction to resolve the issue of attorney's fees. We find *Feldman*, *Castro*, and *Zurita* persuasive authority and agree that attorney's fees may be awarded to a party defending against a declaratory judgment action over which the trial court

26

has determined that it lacks subject matter jurisdiction over the plaintiff's claim.

### 2. Devon's argument that the plain language of the UDJA precludes an award of attorney's fees is unpersuasive.

Devon argues that section 37.009's provision allowing for attorney's fees in any proceeding "under" the UDJA requires the trial court to first have subject matter jurisdiction over the underlying controversy to have the authority to award fees. To support this interpretation of the statute, Devon points to federal case law interpreting substantive federal statutes. *See Cliburn v. Police Jury Ass'n of La., Inc.*, 165 F.3d 315, 316 (5th Cir. 1999) (per curiam) (holding that trial court's award of attorney's fees under ERISA[6] was inconsistent with dismissal for lack of subject matter jurisdiction because there was no ERISA "action" under the statute and neither the plaintiff nor the defendant were a "participant, beneficiary, or fiduciary" eligible to invoke the substantive statute's attorney's fees provision); *In re Knight*, 207 F.3d 1115, 1117–18 (9th Cir. 2000) (relying in part on *Cliburn* to hold that when district court dismissed ERISA action for lack of subject matter jurisdiction, "there was no ERISA action" and therefore no jurisdiction to award attorney's fees and costs); *W.G. v. Senatore*, 18 F.3d 60, 64–65 (2d Cir. 1994) (holding that when trial court lacked subject matter jurisdiction over plaintiff's substantive claims under IDEA,[7] the court lacked jurisdiction to consider plaintiff's request for fees allowed in "any action or proceeding brought under this subsection").

Devon further argues that Texas courts have held that a trial court has jurisdiction to award attorney's fees only when a party has "properly invoked" the UDJA. *See Knighton v. Int'l. Bus. Machines Corp.*, 856 S.W.2d 206, 210 (Tex.

---

[6] The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

[7] The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1485.

App.—Houston [1st Dist.] 1993, writ denied) ("When a claimant . . . has *properly invoked* the declaratory judgment statute, either party may plead for and obtain attorney's fees.") (emphasis added); *Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.*, 796 S.W.2d 763, 771 (Tex. App.—Dallas 1990, writ denied) ("[W]here a claimant or a counter-claimant has *properly invoked* the declaratory judgment statute, either party may plead for and obtain attorney's fees.") (emphasis added). Devon also cites *City of Houston v. Chenam*, 01-08-01005-CV, 2010 WL 143476, at *8 (Tex. App.–Houston [1st Dist.] Jan. 14, 2010, no pet.) (mem. op.), in which the court held that the trial court lacked subject matter jurisdiction over the underlying declaratory judgment action and thus "any claim for attorney's fees arising *under* it." (emphasis added). According to Devon, the section of the UDJA allowing an award of attorney's fees is a subset of the larger Act, and a trial court without jurisdiction under the Act cannot selectively assert subject matter jurisdiction over the remedies section of the Act to award fees.

Initially, we note that decisions of the federal courts, other than the Supreme Court, may be persuasive in a state court or a federal matter, but in this appeal they are not binding. *See J.M. Huber Corp. v. Santa Fe Energy Res., Inc.*, 871 S.W.2d 842, 846 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Further, all of the federal cases Devon cites involved the interpretation of federal substantive statutes. In contrast, the UDJA is a procedural device that does not establish jurisdiction. *Chenault v Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (per curiam) ("[T]he [UDJA] is not a grant of jurisdiction, but 'merely a procedural device for deciding cases already within a court's jurisdiction.'") (quoting *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994)). The court in *In re Knight*, on which Devon relies, expressly acknowledged that courts can award fees even in the absence of subject matter jurisdiction when those fees are authorized by statutes and rules that are

28

non-substantive. *See* 207 F.3d at 1117.

Under the UDJA, the trial court has authority to award attorneys' fees and costs "[i]n any proceeding under this chapter." *See* Tex. Civ. Prac. & Rem. Code § 37.009. By seeking declaratory relief, Devon initiated a "proceeding under this chapter" that falls squarely within the plain language of Section 37.009. In response, KCS properly pleaded an ancillary claim for relief under the statute through its counterclaim for attorneys' fees. *See id.* § 37.004. KCS's fee claim was likewise a "proceeding under this chapter" and thus remained viable even though Devon's action was properly dismissed.

Also unpersuasive is Devon's claim that the trial court lacked jurisdiction to award fees because the UDJA was not "properly invoked" from the outset. None of the cases Devon relies on involve the absence of subject matter jurisdiction over the primary claim. The references to properly invoking the statute in these cases relate only to proper pleading and improper attempts to use the UDJA to recover fees when they are not available under the substantive law that serves as the basis for the plaintiff's claims. *See Knighton*, 856 S.W.2d at 210–11 (holding that trial court did not abuse its discretion to deny request for attorney's fees when the record reflected that the trial court recognized that both parties pursued legitimate rights and therefore each should bear its own attorney's fees); *Hartford Cas. Ins. Co.*, 796 S.W.2d at 772 (reversing judgment for plaintiff on contract claim and declining to remand for consideration of equitable and just attorney's fees under UDJA when plaintiff's additional request for declaratory relief was unnecessary and improper). Similarly, *City of Houston v. Chemam* is not on point, because in that case the court reversed a trial court's denial of the City's plea to the jurisdiction when a plaintiff attempted to avoid governmental immunity by filing a redundant declaratory judgment action and demand for attorney's fees. *See* 2010

29

WL 143476, at *8.

Devon "invoked" the UDJA through its pleadings. KCS, therefore, was eligible to recover its attorneys' fees as a party defending a claim for declaratory relief. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 641–43 (Tex. 2005); *Bradt*, 905 S.W.2d at 759–60; *see also Corcoran v. Atascocita Cmty. Improvement Ass'n, Inc.*, No. 14-12-00982-CV, 2013 WL 5888127, at *9–12 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, pet. denied) (mem. op.) (affirming award of attorney's fees to third-party defendant against whom appellants filed suit). Therefore, regardless of whether Devon prevailed on its own claims, the trial court had jurisdiction over KCS's attorneys' fee claim for the defense of that litigation.

### 3. Texas law does not recognize Devon's distinction between intervening mootness and mootness ab initio.

The Texas Supreme Court has recognized that a trial court retains jurisdiction to award attorneys' fees even if the merits of the dispute become moot. *See Hallman*, 159 S.W.3d at 643; *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). Devon argues that these cases are distinguishable, however, because they involve situations in which a trial court properly had subject matter jurisdiction over a declaratory judgment action at the outset of the case but then later, because of subsequent actions, lost jurisdiction. As support for its contention, Devon cites to *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 481 (E.D. Va. 2005). In that case, the court stated that "[w]here a court is divested of its subject matter jurisdiction over the substantive claim by virtue of intervening mootness, it nonetheless retains jurisdiction to 'consider collateral issues after an action is no longer pending.'" *Id.* at 482. But the court went on to state that, in contrast, "lack of subject matter jurisdiction over a substantive claim

30

serves 'to bar an award of attorney's fees where an action was moot at the time of filing.'" *Id.* at 481.

We conclude that, under Texas law, the point in time when the court lacked subject matter jurisdiction over Devon's predicate claims is irrelevant to KCS's fee claim. Although *Hallman* and *Camarena* involved situations in which the court lost subject matter jurisdiction during the pendency of the litigation because the plaintiff's claims became moot, the same analysis applies to a situation in which the court lacks subject matter jurisdiction over the plaintiff's claims from the inception of the case. *See Hallman*, 159 S.W.3d at 642 ("[A] dispute over attorneys fees is a live controversy.") (citing *Camarena*, 754 S.W.2d at 151).

For example, this Court has recognized that attorneys' fees may be awarded to a defendant under the UDJA when the plaintiff who sought declaratory relief lacked standing to assert its claims. *See Galveston Cnty. Commissioner's Court v. Lohec*, 814 S.W.2d 751, 754–55 (Tex. App.—Houston [14th Dist.] 1991), *rev'd on other grounds*, 841 S.W.2d 361 (Tex. 1992) (remanding for determination of attorneys' fees under the UDJA to party defending claims brought by county commissioner who lacked standing to sue in individual or official capacity); *see also Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 891 (Tex. App.—Austin 2010, pet. denied) (district court had jurisdiction to award attorneys' fees incurred in connection with defense of plaintiff's claims over which the court determined plaintiff lacked standing).

Standing, like mootness, is a component of subject matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445. When a plaintiff lacks standing, the court lacks subject matter jurisdiction. *Id.* at 444-45 ("[A] lack of standing deprives a court of subject matter jurisdiction because standing is an element of such jurisdiction."). In *Lohec*, when this Court found that the intervening plaintiff lacked standing to

31

assert his declaratory judgment claims, this Court necessarily determined that it lacked subject matter jurisdiction over his claims from their inception. 814 S.W.2d at 754–55. Nevertheless, this Court held that the trial court had jurisdiction to decide whether it would be equitable and just to award fees to the defendant. *Id.* at 755. Similarly, in *City of Dripping Springs*, in which the plaintiff argued, as Devon does here, that the trial court lacked jurisdiction to award fees under the UDJA because it lacked jurisdiction over the plaintiff's claims, the Austin Court of Appeals held that the court had authority to award fees. 304 S.W.3d at 891–92.

Devon's argument and reliance on *Samsung Electronics* for the proposition that a court has jurisdiction to award fees when a case becomes moot while the action is pending, but not when the action is moot from its inception, is misplaced because it is contrary to Texas law. According to the Texas cases interpreting the UDJA on which KCS relies, the absence of subject matter jurisdiction over Devon's claims at the inception of the litigation has no effect on whether KCS could recover its fees under the UDJA for defending against them when Devon's pleadings invoked the statute. We therefore sustain KCS's cross-issue.

## CONCLUSION

We hold that the trial court did not err in dismissing Devon's claims for lack of subject matter jurisdiction because Devon's requested declaratory relief sought an impermissible advisory opinion concerning title to Louisiana mineral interests. We therefore affirm that part of the trial court's judgment. We further hold that the trial court did not lose subject matter jurisdiction over KCS's counterclaim for attorney's fees when it determined that it lacked subject matter jurisdiction over Devon's request for declaratory relief, and therefore the trial court erred when it dismissed KCS' claim for attorney's fees and costs under the UDJA. Accordingly, we reverse and remand for the trial court to determine whether, in its discretion,

32

KCS is entitled to attorney's fees and costs arising from its defense against Devon's declaratory judgment action.


/s/    Ken Wise
Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise (C.J. Frost, concurring and dissenting).